COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, Felton and Kelsey
Argued at Salem, Virginia


VIRGINIA LOUISE STEADMAN

v.      Record No. 0621-03-3

LIBERTY FABRICS, INC. AND
 CONNECTICUT INDEMNITY COMPANY

OPINION BY
JUDGE WALTER S. FELTON, JR.
DECEMBER 16, 2003

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Wanda A. Dotson (George L. Townsend; Chandler, Franklin &
O'Bryan, on briefs), for appellant.

Lisa Frisina Clement (PennStuart, on brief), for appellees.


Virginia Steadman appeals a decision of the Workers' Compensation Commission denying her benefits under the Workers' Compensation Act. The commission held that claimant failed to prove by clear and convincing evidence that her carpal tunnel syndrome ("CTS") was not caused by activities outside of employment as required by Code § 65.2-401. For the following reasons, we affirm the commission's decision.

BACKGROUND

On appeal, we review the evidence in the light most favorable to the party prevailing below. R. G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). "'Whether a disease is causally related to the employment and not causally related to other factors is . . . a finding of fact.'" Ross Laboratories v. Barbour, 13 Va. App. 373, 377, 412 S.E.2d 205, 208 (1991) (quoting Island Creek Coal Co. v. Breeding, 6 Va. App. 1, 12, 365 S.E.2d 782, 788 (1988)). We will not disturb the commission's factual findings when supported by credible evidence. Ross, 13 Va. App. at 378, 412 S.E.2d at 208.

Virginia Steadman worked as a "set-up mechanic" for fourteen and a half years with Liberty Fabrics, Inc.[1]  The record showed that her duties as a "set-up mechanic" involved constant hand movement and required the use of various hand-tools, including wrenches, ratchets, screwdrivers, and electric drills.  Prior to her employment by Liberty Fabrics, Steadman worked as a deli manager and in a sewing factory.

Steadman testified she first experienced symptoms of CTS when she began dropping items at home and at work.  As a result, she saw Dr. John T. Philbrick in July 2001, complaining that her hands felt as if they were asleep.  On December 8, 2001, Liberty Fabrics eliminated her position.  The plant ceased operations shortly thereafter.  At this time, Steadman was thirty-six years old and had a tenth grade education.

On December 19, 2001, Dr. Philbrick diagnosed Steadman as having carpal tunnel syndrome during a routine examination.  Subsequent nerve conduction tests confirmed the diagnosis.  In his Attending Physician's Report dated January 28, 2002, Dr. Philbrick stated that she suffered from bilateral CTS caused by repetitive motion and overuse of hands at work.  Steadman testified she told Dr. Philbrick about her duties at work.  Dr. Philbrick also referred her to Dr. Raymond F. Morgan, an orthopedic surgeon, who confirmed the diagnosis and recommended surgery to accomplish a right carpal tunnel release.

On February 14, 2002, Steadman filed a claim for benefits with the Virginia Workers' Compensation Commission, alleging bilateral CTS arising from her employment with Liberty Fabrics, Inc.  On June 20, 2002, Deputy Commissioner Tabb conducted a hearing on Steadman's claim.  Liberty Fabrics, Inc., and its insurer, Connecticut Indemnity Company (hereafter

---

[1] Steadman's duties as a "set-up mechanic" required her to adjust and change machine drive belts and chains; make repairs; install knitting patterns; adjust the knitting elements and latch wires; load new warp and unload spent warp; and perform any maintenance checks during the warp changes.

collectively known as "Liberty Fabrics"), defended on the grounds that Steadman did not suffer from a compensable ordinary disease of life pursuant to Code § 65.2-401. Liberty Fabrics further asserted that she was not disabled during the period requested and that she failed to market her residual work capacity after March 2002.

In his June 26, 2002 opinion, the deputy commissioner found that Steadman proved she had sustained a compensable ordinary disease of life pursuant to Code § 65.2-401.[2] He also found "the medical evidence was clear and convincing, and not a mere probability," to support her claim that the injury was work related. Finally, the deputy commissioner determined Steadman's bilateral CTS arose out of and in the course of her employment, not from causes outside her employment, and that it was characteristic of the employment and caused by conditions peculiar to such repetitive activity.

---

[2] Code § 65.2-401, which defines "ordinary disease of life," provides:

> An ordinary disease of life to which the general public is exposed outside of the employment may be treated as an occupational disease for purposes of this title if each of the following elements is established by clear and convincing evidence, (not a mere probability):
>
> 1. That the disease exists and arose out of and in the course of employment as provided in § 65.2-400 with respect to occupational diseases and did not result from causes outside of the employment, and
>
> 2. That one of the following exists: (a) It follows as an incident of occupational disease as defined in this title; or (b) it is an infectious or contagious disease contracted in the course of one's employment in a hospital or sanitarium or laboratory or nursing home as defined in § 32.1-123, or while otherwise engaged in the direct delivery of health care, or in the course of employment as emergency rescue personnel and those volunteer emergency rescue personnel referred to in § 65.2-101; or (c) it is characteristic of the employment and was caused by conditions peculiar to such employment.

The deputy commissioner awarded Steadman medical benefits pursuant to Code § 65.2-603 for as long as necessary for her work-related bilateral CTS. However, he held she failed to market her residual work capacity, and was not entitled to indemnity benefits.[3] Liberty Fabrics timely requested a review of the deputy commissioner's decision by the full commission.

In its February 7, 2003 opinion, a majority of the commission reversed the decision of the deputy commissioner. It found Steadman failed to prove by clear and convincing evidence that her condition was compensable as an ordinary disease of life pursuant to Code § 65.2-401. The commission determined that there was "no question" she suffered from bilateral CTS. Additionally, it determined that there was sufficient evidence to prove that her condition arose out of and in the course of her employment, based on Dr. Philbrick's January 28, 2002 Attending Physician's Report.

However, the majority of the commission found the evidence insufficient to prove by clear and convincing evidence that Steadman's condition did not result from causes outside her employment. See Code § 65.2-401. The only evidence related to possible causes arising from outside the employment emerged during cross-examination of Steadman at the hearing before the deputy commissioner:

> MS. CLEMENTS: All right. Isn't it true that you don't recall particularly what activities about your job you described to Dr. Filbrick [sic]?
>
> MS. STEADMAN: I couldn't remember when I talked to him last.
>
> MS. CLEMENTS: And isn't it true that at that time you didn't talk to Dr. Filbrick [sic] about any of your activities outside of work?

---

[3] Because the commission determined that the claimant failed to prove her condition was not caused by activities outside her employment, it did not address the deputy commissioner's finding that claimant failed to market her residual work capacity and therefore was not entitled to indemnity benefits. Because the appellant did not appeal the denial of indemnity benefits based on her failure to market her residual work capacity, we do not consider that issue on appeal. See Rule 5A:20.

MS. STEADMAN: I'm not sure. I don't do any activities outside of work.

MS. CLEMENTS: My question to you is did you discuss that with Dr. Filbrick [sic] at the time?

MS. STEADMAN: I'm not sure.

MS. CLEMENTS: Okay. Isn't it true that you have no recollection of Dr. Filbrick [sic] actually asking you about either of those things during that appointment?

MS. STEADMAN: I'm not sure.

The majority of the commission explained that "[w]hile the claimant may not engage in organized activities outside of work, it is clear that she does engage in day-to-day activities that may or may not have played a role in the development of her carpal tunnel syndrome."

ANALYSIS

Steadman contends that the commission erred in finding that she failed to prove by clear and convincing evidence her CTS was not caused by activities outside of work. We disagree.

The Supreme Court of Virginia held in Steinrich Group v. Jemmott, 251 Va. 186, 467 S.E.2d 795 (1996), that carpal tunnel syndrome and other job related impairments resulting from the cumulative trauma caused by repetitive motion were noncompensable under the Workers' Compensation Act. Subsequently, the General Assembly amended Code § 65.2-400 to provide, effective July 1, 1997, that carpal tunnel syndrome is not to be considered an occupational disease, but an ordinary disease of life as defined by Code § 65.2-401.

Before a claimant may be compensated for an ordinary disease of life, she must prove that the disease (1) arose out of and in the course of her employment, (2) did not result from causes outside of the employment, and (3) occurred incident to an occupational disease, an infectious or contagious disease contracted in the course of the employment listed in Code § 65.2-401(2)(b), or is characteristic of the employment and was caused by conditions peculiar to

the employment. Lanning v. Virginia Dept. of Transp., 37 Va. App. 701, 706, 561 S.E.2d 33, 36 (2002) (citations omitted); see Code § 65.2-401.

Code § 65.2-401 further requires the claimant to prove these elements "by clear and convincing evidence, (not a mere probability)." This Court has defined clear and convincing evidence as:

> "[T]hat measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*."

National Fruit Product Co. v. Stanton, 28 Va. App. 650, 654, 507 S.E.2d 667, 669 (1998) (quoting Fred C. Walker Agency v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975)), aff'd, 259 Va. 271, 526 S.E.2d 266 (2000).

The commission's determination regarding causation is a finding of fact and is binding and conclusive. Marcus v. Arlington County Bd. of Supervisors, 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993). The commission found that there was "no question" Steadman suffers from bilateral CTS. In addition, it found the evidence sufficient to prove that her condition arose out of and in the course of her employment. See Code § 65.2-401. The commission, however, concluded Steadman failed to prove by clear and convincing evidence that her condition did not result from causes outside her employment.

The claimant has the burden to prove all the elements of Code § 65.2-401, including whether activities outside of her employment did not result in her CTS. See Lee County Sch. Bd. v. Miller, 38 Va. App. 253, 264, 563 S.E.2d 374, 379 (2002) (court found "that she engaged in no hobbies or other activities outside her work which involved this type of motion"); Lanning, 37 Va. App. at 704, 561 S.E.2d at 34 (claimant performed only light house work and did not knit, garden or work with hand tools); Great Eastern Resort Corp. v. Gordon, 31 Va. App. 608, 611,

525 S.E.2d 55, 56-57 (2000) (claimant denied hobbies or activities outside of work involving repetitive movement of her right hand); National Fruit Product Co., 28 Va. App. at 653, 507 S.E.2d at 669 (claimant did not perform any activities outside her employment involving the repetitive use of her hands).

Steadman asserts that she presented sufficient evidence to prove by clear and convincing evidence that her disease was not caused by activities outside of her employment, relying on her testimony that "I don't do any activities outside of work." In Lee County Sch. Bd., the Court held that the evidence as a whole, including claimant's testimony, would support the commission's findings that an ordinary disease of life, under Code § 65.2-401, was caused by her employment, and was not caused by activities outside of the employment. Lee County Sch. Bd., 38 Va. App. at 263-64, 563 S.E.2d at 379-80. The Court found that the "claimant testified that she engaged in no hobbies or other activities outside her work which involved this type of motion."[4] Id. at 264, 563 S.E.2d at 379. The claimant here offered no such evidence.

Additionally in Lee County Sch. Bd., the Court further stated that "[a]lthough statements from claimant's doctors that her CTS did not result from any causes outside of the employment may have strengthened claimant's case, such statements were not critical to the commission's determination in light of claimant's own testimony." Id. (citing Dollar Gen'l Store v. Cridlin, 22 Va. App. 171, 176-77, 468 S.E.2d 152, 154-55 (1996)). While medical evidence based on a physician's knowledge of a claimant's outside employment activities may establish a claimant's burden by clear and convincing evidence, "[a] finding of causation need not be based exclusively on medical evidence." Lee County Sch. Bd., 38 Va. App. at 260, 563 S.E.2d at 378 (citing

---

[4] The dissent in Lee County Sch. Bd. opined that the claimant failed to prove, even by a preponderance of the evidence, that no activities outside her employment caused her CTS. It noted that claimant's only testimony was that she was not "involved in a lot of other things outside of work . . . hobbies . . . bowling, anything like that." Lee County Sch. Bd., 38 Va. App. at 272, 563 S.E.2d at 383 (Agee, J., dissenting).

<u>Dollar Gen'l Store</u>, 22 Va. App. at 176, 468 S.E.2d at 154 ("[t]he testimony of a claimant may also be considered in determining causation, especially where the medical testimony is inconclusive"). Here, however, the commission found that the claimant's testimony that she engaged in no activities outside of employment fell short of the required standard of proof, particularly in light of the lack of any medical evidence related to consideration of how activities outside employment entered into the physician's opinion that the CTS was caused by and arose out of her employment. <u>See</u> <u>Lee County Sch. Bd.</u>, 38 Va. App. at 264, 563 S.E.2d at 379.

Steadman argues on appeal that her remark about "any activities outside of work" refers to any activities involving repetitive activity. The record, however, is silent as to the type of activities in which Steadman participated. "In determining whether credible evidence exists to support the commission's findings of fact, 'the appellate court does not retry the facts, reweigh . . . the evidence, or make its own determination of the credibility of the witnesses.'" <u>Id.</u> at 260, 563 S.E.2d at 378 (quoting <u>Wagner Enters. v. Brooks</u>, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)). In <u>Lanning</u>, this Court held that "a bare assertion that a condition is 'work-related' does not meet the 'clear and convincing' standard." <u>Lanning</u>, 37 Va. App. at 708, 561 S.E.2d at 36. Likewise a bare assertion by the claimant, without other supporting evidence, that her condition is not a result of outside causes also fails to satisfy the same standard.

We hold that the record supports the commission's finding that, without additional evidence, Steadman's testimony that she engaged in no activities outside of her employment fails to prove by clear and convincing evidence that the myriad of her life activities outside her employment were not the cause of her CTS. <u>Cf.</u> <u>National Fruit Product Co.</u>, 28 Va. App. at 653, 507 S.E.2d at 669 ("uncontradicted opinion" testimony by claimant's physician expressed as a high probability and claimant's testimony constitute credible evidence to support finding of causation).

Accordingly, we affirm the decision of the commission that claimant failed to prove by clear and convincing evidence that her ordinary disease of life was not caused by activities outside her employment.

Affirmed.