COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Frank and Humphreys
Argued at Chesapeake, Virginia


AGNES V. LANNING
                                              OPINION BY
v.    Record No. 2264-01-1        JUDGE ROBERT P. FRANK
                                           MARCH 26, 2002
VIRGINIA DEPARTMENT OF TRANSPORTATION


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                John R. Lomax (Berry, Ermlich, Lomax &
                Bennett, on brief), for appellant.

                Cheryl A. Wilkerson, Assistant Attorney
                General (Randolph A. Beales, Attorney
                General; Judith Williams Jagdmann, Deputy
                Attorney General; Gregory E. Lucyk, Senior
                Assistant Attorney General; Scott John
                Fitzgerald, Assistant Attorney General, on
                brief), for appellee.


     Agnes V. Lanning (claimant) filed a claim for benefits with

the Virginia Workers' Compensation Commission (commission)

alleging an injury by accident and development of the

occupational disease of carpal tunnel syndrome while working for

the Virginia Department of Transportation (employer).  The

deputy commissioner found a compensable ordinary disease of

life, but did not award any lost time or benefits.  The full

commission reversed the deputy commissioner, finding claimant

failed to meet her burden to prove that her carpal tunnel

syndrome was caused by her work.  For the reasons stated, we

reverse the commission and remand for further findings.

BACKGROUND

The evidence is not controverted.

Claimant alleges both an injury by accident on February 25, 2000, and the occupational disease of carpal tunnel syndrome. Claimant began working for employer in 1982 as a toll collector. In 1994, she was transferred to a clerical position, which involved data entry, purchase orders, inventory, and requisitions. She testified that on February 25, 2000, she was using her right hand to make her daily time entries when her hand "wouldn't work." She could not move her fingers.

Claimant testified she began to feel "twinging and tingling" in her right wrist six months prior to the February 25, 2000 incident, but did not seek medical attention until after that incident. While claimant has a home computer, she "very seldom" used it. She further testified her only activity at home involving repetitive movement was light housework. She did not knit, garden, or work with hand tools.

On March 3, 2000, claimant saw Dr. Frank G. Burns, Jr., her primary treating physician. Dr. Donald E. LaMarche, Jr., performed an electrodiagnostic study on March 17, 2000, and diagnosed right-side carpal tunnel syndrome. Dr. Burns performed a carpal tunnel release on the right arm on April 11, 2000. Due to complications, claimant underwent another carpal tunnel release on August 25, 2000.

-

Dr. Burns first saw claimant in 1993, after she sustained a severe injury to her left arm and hand while working at the toll booth. Dr. Burns performed surgery on her left shoulder. However, for a while after the surgery, claimant was unable to use her left arm at all, and she began having symptoms of right hand carpal tunnel syndrome. She had several "flare-ups" during subsequent years. In 1999 and 2000, her right hand symptoms became much more severe.

In his letter dated January 18, 2001, Dr. Burns indicated claimant's "pain is related to her on the job injury and the recurrences that she has had is related [sic] back to her original injuries and having to use the right arm more." Other than this letter, no evidence directly addressed causation.

The deputy commissioner found claimant had met her burden:

> All of the claimant's doctors agree that the claimant suffers from carpal tunnel syndrome and Dr. Burns causally related it to her work. It is clear to the Commission that the claimant had no significant exposure to the hazards of carpal tunnel syndrome outside of the work place and that her job entailed numerous repetitive activities exposing her to the danger. Outside the workplace, she performs no unusual activities and is not involved in extensive sports or recreational activities that could cause the problem. Based upon the persuasive and uncontradicted evidence, we find that she has met her burden of proving that her carpal tunnel syndrome was caused by her employment, and she has established all elements required by [Code] § 65.2-401 by clear and convincing evidence, not a mere probability.

-

The deputy commissioner further found, however, that claimant's medical records did "not support any period of disability."

The full commission reversed the deputy's award, finding:

> although Dr. Burns has stated that her carpal tunnel syndrome is related to her work, this is insufficient to establish by clear and convincing evidence that her work caused her carpal tunnel syndrome. In prior cases, we have held that a medical opinion that a condition is "compatible" or "related" to work is insufficient.

(Emphasis in original.) The commission did not determine if any period of disability existed.

ANALYSIS

I. Evidence of Causation

On appeal, we construe the evidence in the light most favorable to the party prevailing below. R. G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). The commission's finding of fact on the issue of causation will be upheld if supported by credible evidence. See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989); Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989).

Code § 65.2-400(C) provides "the condition[s] of carpal tunnel syndrome are not occupational diseases but are ordinary diseases of life as defined in [Code] § 65.2-401."[1] Code

---

[1] Code § 65.2-401, "Ordinary disease of life" coverage, reads:

-

§ 65.2-401 provides that the elements required to prove a compensable ordinary disease of life must be "established by clear and convincing evidence, (not a mere probability)."  The narrow issue before this Court, therefore, is whether claimant proved by "clear and convincing evidence" that her carpal tunnel syndrome was caused by her employment.

---

An ordinary disease of life to which the general pubic is exposed outside of the employment may be treated as an occupational disease for purposes of this [Workers' Compensation] title if each of the following elements is established by clear and convincing evidence, (not a mere probability):

1.  That the disease exists and arose out of and in the course of employment as provided in § 65.2-400 with respect to occupational diseases and did not result from causes outside of the employment, and

2.  That one of the following exists:

a.  It follows as an incident of occupational disease as defined in this title; or

b.  It is an infectious or contagious disease contracted in the course of one's employment in a hospital or sanitarium or laboratory or nursing home as defined in § 32.1-123, or while otherwise engaged in the direct delivery of health care, or in the course of employment as emergency rescue personnel and those volunteer emergency rescue personnel referred to in § 65.2-101; or

c.  It is characteristic of the employment and was caused by conditions peculiar to such employment.

-

> For an ordinary disease of life to be
> compensable, a claimant must prove by "clear
> and convincing evidence, (not mere
> probability)" that the disease (1) arose out
> of and in the course of his employment, (2)
> did not result from causes outside of the
> employment, and (3) follows as an incident
> of an occupational disease, is an infectious
> or contagious disease contracted in the
> course of the employment listed in Code
> § 65.2-401(2)(b), or is characteristic of
> the employment and was caused by conditions
> peculiar to the employment. Code
> § 65.2-401; see also Lindenfeld v. City of
> Richmond Sheriff's Office, 25 Va. App. 775,
> 784, 492 S.E.2d 506, 510 (1997).

Great E. Resort Corp. v. Gordon, 31 Va. App. 608, 612, 525

S.E.2d 55, 57 (2000).

We have defined "clear and convincing evidence" as:

> "that measure or degree of proof which will
> produce in the mind of the trier of facts a
> firm belief or conviction as to the
> allegations sought to be established. It is
> intermediate, being more than a mere
> preponderance, but not to the extent of such
> certainty as is required beyond a reasonable
> doubt as in criminal cases. It does not
> mean clear and unequivocal."

National Fruit Prod. Co. v. Staton, 28 Va. App. 650, 654, 507

S.E.2d 667, 669 (1998) (quoting Fred C. Walker Agency, Inc. v.

Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975)) (emphasis

in original), aff'd, 259 Va. 271, 526 S.E.2d 266 (2000) (per

curiam).

Claimant contends the treating physician's opinion that her

pain is "related" to her work was sufficient to prove causation

between the disease and the workplace. Employer contends the

-

word, "related," is not proof of causation by "clear and convincing evidence." The commission agreed with employer, finding that simply "relating" carpal tunnel syndrome to work conditions was insufficient to establish by clear and convincing evidence that claimant's work caused her disease.

Dr. Burns traced his treatment of claimant to March 31, 1993, for an injury to her left arm and shoulder "when somebody at the toll booth grabbed her arm and about pulled her out of the toll booth." Because of the injury and resulting surgery to her left shoulder, Dr. Burns indicated claimant "started having symptoms of right carpal tunnel syndrome." This condition began in May 1994, when claimant had to use her right arm more frequently. Dr. Burns related that claimant had "flare ups of this off and on over the years and it became much more severe in 1999, and in 2000." He opined that this injury:

> goes all the way back to her original injury[. W]e have put a lot of stress and strain on her right arm and over the years she has developed carpal tunnel syndrome, which has become worse with the type of computer work she is now doing. I think her pain is related to her on the job injury and the recurrences that she had is related [sic] back to her original injuries and having to use the right arm more, and also the work she is doing now, using the computer.

The commission focused solely on Dr. Burns' use of the word, "related," without considering the totality of his medical opinion.

We agree with the commission that a bare assertion that a condition is "work-related" does not meet the "clear and convincing" standard. The fact that a condition is "related to" the workplace is not proof by itself of causation. However, the evidence here includes more than a bald assertion of a relationship between claimant's work and carpal tunnel syndrome.

While he employed the words, "related" and "related back," Dr. Burns explained he believed claimant's present problem with carpal tunnel syndrome was caused by her original injury at the toll booth. The "injury" became worse due to her constant use of the computer in her new position. He did not merely assert that the injury was related to her job; he explained how her prior and present work conditions resulted in the injury. Additionally, no evidence proved claimant had carpal tunnel syndrome or experienced symptoms related to that condition prior to her work for employer, and the evidence proved no causes outside her employment contributed to that condition. In this context, Dr. Burns' opinion could be considered clear and convincing evidence that claimant's condition was caused by her work.

"We will not substitute form over substance by requiring a physician to use magic words . . . when the record is void of any evidence of non-employment factors responsible for [the condition]." Island Creek Coal Co. v. Breeding, 6 Va. App. 1, 11-12, 365 S.E.2d 782, 788 (1988). As Commissioner Diamond said

-

in the dissent, "[t]he Commission should not require the use of talismanic words to find causation."

We are cognizant of the standard of review. However, the commission did not properly evaluate the evidence in this case. Rather than viewing Dr. Burns' medical opinion in its entirety, the commission addressed only his use of the word, "related," in its decision. We cannot affirm a decision that emphasizes the use of one word to the exclusion of considerations of the context within which the word is used and other evidence in the record.

## II.  Period of Disability

We now turn to the question of whether claimant is entitled to disability from April 11, 2000, the date of surgery, until October 2, 2000, the date when claimant returned to work. The deputy commissioner found the medical records do not support any period of disability. The commission did not consider disability.

In order for us to review a decision of the commission, the commission must make a finding, even if the deputy commissioner previously made a factual ruling. See Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 377, 363 S.E.2d 433, 434 (1987). As the commission did not address claimant's appeal of the deputy's finding that the evidence showed no period of disability, we must remand this issue for further findings by the commission.

-

For the reasons stated above, we reverse the commission's opinion and remand for the commission to determine if the entirety of the medical evidence is sufficient to show causation.  The commission also must make a finding regarding the period of disability, if causation is found.

<u>Reversed and remanded.</u>